Case number 25 1679 Dennis McCormick et al. versus Merlo SpA Industria Metal Mechanica et al. Four arguments not to exceed 15 minutes per side. Mr. Byman-Katzmann, you may proceed for the appellant. That's actually Nicholas Lau on behalf of the appellant. May it please the court, my name is Nicholas Lau. I represent the appellants, Dennis McCormick and Farm Today. I'd like to reserve three minutes for rebuttal. This appeal challenges a Rule 12b6 dismissal with prejudice as to two claims. A claim brought under the Michigan Farm Utility and Equipment Act, which I'll refer to as the MFUEA, and tortious interference with a business relationship or expectancy under Michigan law. The district court failed to accept the allegations in the complaint as true and draw reasonable inferences in favor of the appellants when the court ruled upon the 12b6. Under 12b6, a complaint survives if it pleads enough facts to state a claim that's plausible on its face. Plausibility requires more than a sheer possibility. The court must accept well-pledged factual allegations as true and draw reasonable inferences in favor of the appellants. What's your best evidence of an agreement in this case? There are two theories that are proposed in the first amended complaint. The first agreement is really the beginning discussions with the appellants, which they start with telephone calls where my client and Merlot indicate we will honor the terms of the now terminated sole exclusive distributor in the United States. We'll agree to honor the terms of that. Do you have any pending orders? Then my client goes ahead and sends Merlot the pending orders that he has that obviously cannot be... If that's the case, why don't you bring a promissory estoppel claim and get around, you know, statute of fraud, all the issues you have with showing an agreement? Well, as to the statute of frauds, the statute, the Farm and Utility Act specifically recognizes oral contracts. So that's why I didn't bring a promissory estoppel or an unjust enrichment claim because the MFUEA specifically recognizes that supplier-dealer relationships can be formed by conduct and by words and representations that are made. And here that's exactly what you have. You have conduct by Merlot and the appellants forming the agreement. But I thought, why isn't the July 27th email contradict that in the sense that they talk about spot sales? Again, I think it's kind of the timeline, the sequence of events here, Your Honor. So in the beginning you have, hey, what is the North American, what does the North American market look like? All right, appellants are in the Midwest. They've been servicing the Midwest for two and a half years. This is the market. Okay, great. How many orders do you have and who have you completed orders with over the two and a half years? My client provides all of that to Merlot. Is that the 15 orders you're talking about? That's the 15 orders. But in addition to those 15 orders, the First Amendment complaint identifies the completed sales that were previous to that with respect to those dealers. But how does that show an agreement? Well, as far as the agreement goes, it's not only the identification of the 15 orders, but it is also the aspect that Merlot indicates, number one, we are going to complete those orders in Q4 of 2023. In addition to that, you look at Merlot listing. I thought they were saying they were having supply chain problems and so they couldn't promise that they would do anything and they wanted purchase orders and then to respond to those. The 15 orders, the way that I read the communications is that the 15 orders were going to start being shipped in Q4 of 2023 when Merlot America would be set up or in the process of being set up in North America. And then the general terms of sale, which is the July 27th email, is where they talk about, hey, this is how we're going to handle these future orders in the future. This is going to be the deal. This is how we're going to handle it. You're going to send us a quote or an invoice. We'll send you an offer and then we'll basically allocate shipping time for those orders. Okay, I think you, I'm sorry to interrupt, I think you had multiple points in response to Judge Moore you wanted to make. Yeah, the other point that I wanted to make is that the appellants are a dealer underneath the statute and dealer includes somebody that obtains inventory and the key is from another person for resale, wholesale, or distribution. We identify in the first amended complaint parts that were in the appellants inventory at the time of the termination of these agreement alleged in the complaint. Those parts were like worth about $4,000. That is correct, your honor. Is that the only aspect that you are a dealer for as opposed to these 15 contracts worth a million and a half dollars? I identified the parts that we actually had in our inventory which would trigger the repurchasing requirements of the Michigan Farm and Utility Act but the MFUEA has a dual purpose. It has a repurchasing clause and it also has a compensation almost like a breach of contract damages clause within the statute. So I'm, so on the repurchasing side I'm asking that Merlot repurchase since they terminated the agreement these basically six pieces of parts. What I'm wondering is does that make you a dealer vis-a-vis this purported agreement that you have which was the oral agreement? Yes. That you were talking about vis-a-vis the 1.5 million dollars of 15 sales? The parts alone bestowed dealer status. The case that's on point is the Cloverdale case that is referenced in our in our brief it's Cloverdale Equipment Manitowoc Engineering 964 FSUP 1152 Eastern District of Michigan 1997. That case specifically says that a person can retain an inventory of repair parts only and still qualify for dealer protection so long as those repair parts are for equipment as that term is defined in the MFUEA. So getting back to Judge Tappar's original question about this where is the agreement you your answer seemed to be that it was an oral agreement. It starts off as an oral agreement the honoring of the terms of the representative agreement with AMS and also it's with respect to the conduct that Merlot exhibited here. The enrollment in the parts platform that Merlot has in addition to that the the acceptance of 15 orders and the listing of farm today as a dealer on their public website. So it would seem that you could have issues then with understanding what exactly this oral contract is if you're then having to rely on all of these other developments under the MFUEA would that kind of a situation qualify for protection as your assumption? It would your honor because under the definition of an agreement in the MFUEA it's described broadly it's written oral or implied contract sales agreement between a supplier and a dealer by which the dealers authorized to engage in the business of retail sale and service wholesale sale and service or the distribution of tractors and equipment as an authorized outlet of the supplier or in accordance with the methods and procedures provided for prescribed by the supplier. What is the agreement? I'm at this point confused as to what the agreement is. I know you say it starts oral and then there's conduct and what is the agreement? What are you saying is the qualifying agreement? The qualifying agreement really gets put into a written agreement on July 27th when my client accepts the terms of the July 27th email which indicates we're on a going forward basis we are going to handle movement of equipment from you're going to present us with an offer the the listings will be detailed and thereafter we will start shipping machines and equipment to you. But that didn't require Merlot to actually send offers did it? Because it was saying this is the general terms of sale right that you're talking about. It's a framework. As the framework but that doesn't say there's going to be an offer of certain number of these telehandlers or anything about the terms of that. All of it's to be decided in the future and then Merlot says well we don't want to do we want to have anything to do with you anymore. The the July 27th email does identify here's how we're going to handle the process for the ordering of machines. It doesn't commit to actually doing the process does it? The July 27th email does indicate that the and again that email is titled current equipment orders it does indicate that the machines that were previously ordered will be shipped in Q4 and now what we're going to... I thought it said that for each sale that Merlot would give McCormick an offer so if if you sold something then Merlot would provide an offer that would be signed and accepted and that would make that agreement so that's why I called it spot sales before. Right and but I view the 15 machines at the beginning of the relationship as those are agreed upon machines that are going to be shipped in Q4 based upon the representations made by Merlot. So those weren't part of the spot sales and the purchase orders and all of that? That's not the way that I that's not the way that I understand the dialogue. They indicate hey we have 15 orders all the emails following up to that say we will ship those in Q4. They never they never indicate hey the price isn't right or hey what you sold it for is inaccurate they they continue to say look we will start shipping those in Q4 and in fact we're trying to figure out how we're going to allocate our stock amongst all of the dealers. So is your view then that the agreement involves only the 15 orders plus the $4,000 of parts that you want to return? It's nothing more than that. I think that the I I think as a starting point to answer your question I think the agreement includes those 15 orders but I also think that the spot sales combined with the listing of Farm Today as a dealer along with the part was a future and ongoing relationship with Merlot into the future. So they so under your theory they would be bound to continue the relationship? Yes your honor and the reason why is because the statute specifically indicates that in order to terminate a dealer supplier agreement you have to provide proper notice opportunity to cure before you can terminate it and here Merlot did not provide any type of notice in fact declared the agreement quote null and void. Why declare an agreement null and void if there is no agreement is my point in my brief. I thank your honor I see that I'm out of time but we'd request that the district court's opinion be reversed and remanded. May please the court Jesse Katzmann on behalf of Appalese Merlot SPA and Merlot America. The district court was correct to dismiss the amended complaint and the district court was correct in doing so with prejudice. Plaintiffs have had two attempts to state a claim and have not been able to do so. I want to address a few questions that just came up. The first being the you know the agreement and dealer status. The Farm Equipment Act is at its core an inventory repurchase statute. It is designed to balance the bargaining power between a dealer and a supplier. The situation that it was designed to protect against is you know where an agreement or circumstances require that a dealer carry surplus inventory and the relationship is terminated. The supplier will bear the financial burden and risk of that surplus inventory. In this case the first issue we have is the dealer's status. We talked about this excess inventory. Can I just skip ahead just for a second and talk about the 15 sales and the last question Judge Moore asked to your friend which is could I know he took issue with this but I found it interesting which is could the 15 sales could there be an agreement over that I mean at the outset they list him as a dealer right they they lead him to believe at least according to the complaint that he is going to be a supplier. They tell him to continue to contact the dealers. They opened an internal portal so he could order parts. All those things occurred. Why can't we viewing the evidence in the light most favorable to the plaintiff at least conclude maybe your answer is he didn't allege it but that that that portion is the agreement. So I think there's a few issues there. One is the frankly just the chronology of those 15 orders. The sales were at least began or you know started transacting under an agreement with AMR. The complaint alleges that hey you know we've secured these orders through the relationship with AMR. These things need to get delivered right and you need to deliver these to our dealers right so those those transactions had already started under an agreement with AMR under a representative agreement which for reasons I'll address later I do not under the dealer statute either but I think that's the theory is that Merlot validated that agreement with this oral contract that was made. Yes that is the allegation that plaintiffs make. Right and it's a 12b6 so we're supposed to look favorably on credible allegations or believable allegations so what's wrong with that allegation allowing them to withstand a 12b6 motion? Yeah sure I mean so on that point Iqbal Twombly still requires the plausibility standard still requires for a party to allege facts sufficient to support their legal theory. In this case this is a contractual argument and there's threshold issues of privity that are missing. You have a representative agreement between AMR and Mr. McCormick and the allegation is... I can't Merlot say yeah you McCormick you've got a good arrangement with AMR we're gonna take that over and we're gonna support you in the sales of these 15 machines. Well the the issue on the pleadings there is that there's no the argument is that that representative agreement was then amended when the parties entered the general terms of sale and I think also in conjunction with this July cover email with the general terms of sale but that that agreement doesn't reference the representative agreement it doesn't incorporate it there's nothing there's nothing to suggest some type of amendment and my earlier point was that there's still a number of steps that need to occur to get the right parties basically in the right shoes for purposes of privity. Yeah I know that this may lead us to the tortious interference with business relationships claim but it does seem that if one accepts the representations of the other side that Merlot was arguably taking advantage of and tortuously interfering with the relationships that McCormick and and Farm 2 Day had with the people that were going to buy the 15 machines for 1.5 million dollars or was it more even more than that? I think in any event the dollars don't matter but they were large. Right so that actually brings me to a point that I didn't yet get to complete which is on that because I believe that ties in a way to the 15 orders and the initial question that I don't think I fully completely answered was you know why can't those 15 orders be the limited agreement between the parties and the reason that they cannot is because there are no allegations of a full transaction on that issue right there are no allegations of product being shipped to McCormick right to be a dealer he must obtain the inventory there is no allegation that Farm 2 Day or McCormick remitted any funds paid any amounts to Merlot for that right like the threshold requirements of a transaction never occurred so I think that is a fundamental issue and Judge Moore I apologize if I did not answer your your most recent question. So can I ask you so assume a hypothetical that's similar in kind you actually have conversations you say you're going to be our representative they go out and secure 15 sales and come back to you and you could say there's no agreement because none of the process has happened nothing shipped no money's changed hands no agreement. I think it depends if we're talking about lowercase a or capital A agreement right you you might be able to infer an agreement under those. I'm talking about an agreement under the law this law yeah I don't I don't think you get there because you can he can secure and facilitate just as he did under the representative agreement but that's a commission-based sales agent structure right and that the Farm Equipment Act was never intended to or contemplated to protect those type of individuals and as we explained in briefing there's a completely different statute that governs those types of arrangements. Can you address the tortious interference with business relationships claim as as to why even if the MFUEA doesn't apply why this common law tort in Michigan wouldn't be at least applicable through the 12 v 6 level? Yep so the first reason is at its core that claim is that Merlot decided not to do business with farm today and we've cited a few cases that established right the decision to not do business with another party to stand up your distribution network in a way that makes sense and even one case says to avoid commission payments right is not cannot give rise to tort the principal issue here is that if there were a claim it would be a contractual claim right if any duty arose it would be under an agreement and ostensibly you know one for non solicitation or confidentiality as to the information that they allege they provided but no such provision exists right so one can't transform a non-existent breach of contract claim into a claim for tort or tortuous interference in this case they had these relationships with these entities that they named in the complaint you're copying X to give them certain information about the entities and then you know a few months down the road they said we don't we don't need you anymore we're now talking to your the people you were your customers we're now dealing with them directly we don't need you so that's sort of the interference I don't know why you never contact to have a tortious interference client under those circumstances so I would respond to that by saying that the last part that you just said is your honor is not alleged in the complaint right what they let they do allege that information was provided and if you look at the chronology they initiated the conversations that's in the exhibits of the complaint they say hey we have these orders how we can get these filled Merlot says give us information on these orders they give them the information they say here the ones you know that you guys are supposed to send to our dealers fast forward a little bit though the complaint does not allege at any point that there that farm today's relationship with its dealer networks has terminated instead the allegation is that Merlot also has contacted members of this dealer network and Merlot has on information and belief transacted business was has transacted business with them and that brings to the broadest point let me let me ask it a different way let's assume that McCormick had these business relationships with these people he would sell them things he sold them this equipment you have no idea who they are just assume this I'm not saying this happened you assume with bad intent let's get that list let's get all his information and then you go around him and sell it directly to them that's not interfering with his business relationship so I think you're I think you're hypothetical makes it a bit closer I'll concede that but I still don't think it does without a duty right that's why we have contract law if you're going to disclose something that's precious to you you secure some type of agreement that that information will but is it true that in every tortious interference case you can't win unless there's a contract or a duty of some kind that comes a contractual duty because I thought there were three ways you could one's fraud one's unethical and the third one was definitely like past dealings and so why wouldn't fraud be enough or unethical behavior well I'm saying you there would need to be a underlying duty not to use information that was voluntarily provided to you what is your best case and this is obviously a Michigan law matter not a federal law matter is there a Michigan case on tortuous interference that you think is the best one supporting your yeah I do well I guess frankly I think the best case is is likely the is likely the Urban Associates case of this court which was applying Michigan law but you're asking me for a Michigan case I think the Daley and Dykema case to an extent helps us I'm trying to think of the very best Michigan case but we would find them in your brief I assume yes the the last point I'll say about this tortious interference issue is that you know as I see it the expectancy or benefit that farm today says it was interfered with is really comes down to Commission payments that were owed from AMR right it's the benefit it received from its dealer network was the ability to secure orders from its dealer network route those to AMR products would be and then farm today or rather McCormick would receive a commission payment and here that the right to any of its you know any expectancy of that benefit simply went away when AMR went away well but they they are alleging this oral contract that that Merlot would take step in the shoes of AMR did the 15 sales occur to the 15 customers I don't know your honor we would obviously we're just looking at a complaint so we would want to look at that complaint to see what it said yes yes but I will say about stepping in the shoes that brings back to my original point which is the remedy there as I see it is breach of contract right you if you said you were gonna do something for me and you didn't do it all right what's what's the remedy or perhaps it's promise or unstoppable but you know what I find interesting is that neither of those things are alleged here right it's just just the farm equipment at claim and then I guess the last the last thing I will say is just leave to amend and you know the court district courts dismissal with prejudice you know plaintiffs had two bites of the apple the cases that both sides have cited make clear that the district court does not abuse its discretion and not granting plaintiff a third bite in this case there's been no allegation of any transaction between the parties that would establish an agreement and frankly the email that was cut off in plaintiffs complaint but included our reply brief makes clear that there was never an understanding of an agreement under the act right where plaintiff says hey you know the general terms you had me signed is very vague I don't understand it we should get a new future agreement that establishes what our relationship will be I see I'm out of time thank you thank you thank you I want to touch on a couple of points made by mr. Katzman and I'd like to start with the tortious interference claim I think the court is queued in on was there an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy mr. Katzman indicates hey look appellants just volunteer voluntarily provided this information that's not an accurate statement we provided this information after Merlot agreed that they would be honoring the terms of the AMS agreement and the AMS agreement had some exclusivity language in it in addition to that it required my client to sell a certain number of parts evidence of fraud or unethical behavior yes so the case that I cite to you in my brief is the foreman case which effectively says that a promise made in bad faith right correct so but what's the best evidence of that yeah the best evidence of that is that we agree to honor the terms of the representative agreement and then they obtain all of the information and to your point in your questions to mr. Katzman go around the appellants and then start fulfilling those orders and in fact in the email in September that's attached to the first amended complaint they go we've already took over all of the communications directly with those dealers in the relationship with them will be direct and so basically what they've done is they've said hey look we'll agree to honor this thing give us the information thanks for giving us the information we'll now go and just do the deals directly with them and cut you out which email are you talking about I'm referring to July 17th excuse me your honor not the July 27th but July 17th it's actually it's it's exhibit year 11 your honor okay thank you that's all I need yeah it says and states right now we already took over directly all communications with all u.s. dealers including the ones you regularly mention or refer to the relationship dealer Merlot's will be direct will provide will be providing all necessary product info quotations directly to them you could still assist them as far as it as far as it goes potential sales and leads and or other kind of support you can grant them but this should be something purely and exclusively between you and that essentially what they did is they took the information and then went and did a deal with them directly and basically cut out the appellant and I think that's enough for tortious interference with a business relationship and I think it's properly pled and the one item that I want to I'm out of time your honors what I would request is that the district courts opinion in order to be reversed and this case be remanded for further proceedings consistent therein or in the that we be allowed leave to amend to fix any type of discrepancies that the district court found in our original First Amendment complaint thank you